## Case No. 3,215.

### COPP v. DE CASTRO & DONNER SUGAR-REFINING CO.

[8 Ben. 321.][1]

District Court, E. D. New York. Dec. Term, 1875.

INTERPLEADER IN ADMIRALTY—FREIGHT—CHARTER PARTY AND BILL OF LADING—INJUNCTION—JURISDICTION—POWER OF THE COURT.

1. C., the master of a brig, filed a libel in personam against the D. & D. S. F. Co. to recover freight on a cargo of sugar brought in the brig from Bahia to New York under a charter party and bill of lading. Before answering, the company presented a petition to the court, in which they set forth that they had entered into the charter party with one B., who had the disposition and control of the brig at Bahia, under which the sugar was shipped

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

and the bill of lading signed; that the sugar was brought to New York and delivered to them, and they were willing to pay the freight, as to the amount of which there was no dispute; that a suit was threatened against them by L. & Co., as assignees of B., to recover the same amount; and they prayed that they might be allowed to pay the money into court; that C. might be enjoined from further proceedings in this suit against them, and that L. & Co. might be enjoined from commencing any suit against them, and that they might have their costs out of the fund. L. & Co. appeared and consented to the prayer of the petition, but C. opposed it. It appeared that C. had chartered the brig in New York to B., for a voyage to Bahia and back, and that the charter referred to in the bill of lading was a subcharter, made by B., in Bahia, to which C. was not a party; that the freight due the vessel under the original charter to B. had been paid, but that there was a controversy between B. and C., as to a claim for the detention of the vessel in Bahia, arising out of the terms of the original charter, and that C. sought to collect this freight to secure such claim. *Held*, that a court of admiralty not only has the power but is charged with the duty of devising methods, whereby all questions, of which it can take cognizance, may be adjudicated speedily and justly.

2. The court had jurisdiction of the parties, two of them being before the court and the other consenting to appear.

3. The court had power to restrain the parties, as prayed for.

4. The rights of all parties could only be adjusted in the way requested, and would be as well protected so as in any way.

5. The fact, that the result would be to turn the proceeding from a proceeding in personam to a proceeding against the freight in rem, was no objection.

6. The prayer of the petition should be granted.

This was a hearing upon an order to show cause why the prayer of the petitioners, the De Castro & Donner Sugar Refining Company should not be granted, on the facts stated in the opinion of the court.

Beebe, Wilcox & Hobbs, for libellant.
Martin & Smith, for petitioners.
Coudert Bros., for intervenors.

BENEDICT, District Judge. The libel in this cause is filed by the master of the brig Afton. It sets forth a shipment of 5,660 bags of sugar on board that vessel, in Bahia, to be transported therein to the port of New York, and there "delivered unto order or assigns, he or they paying freight for the said goods, 35 shillings, British sterling, per ton, and all other conditions as per charter party dated Bahia, 30th April, 1875." It also sets forth the execution of bills of lading, in which said shipment is set forth, and a transportation of said cargo in accordance therewith, and a delivery thereof to the defendants, by whom the bills of lading were held, whereby the defendants became liable to the libellant, as he claims, for the freight stated in the bill of lading. Process in personam having been issued and served upon the defendants, an appearance was entered.

Thereafter before answer a petition is filed on the part of the defendants, setting forth

the following facts: On the 30th day of April, 1875, the defendants at Bahia entered into a charter party with Theodore E. Bondt, who had the disposition and control of the brig Afton, whereby said brig was chartered to them to take in a full cargo of sugar in bags, and deliver the same at a port in the United States, to be designated, on being paid freight at 35 shillings sterling per ton. A shipment of the sugar in the libel mentioned, in pursuance of said charter party, was made, and the same was transported to New York, and there delivered to the defendants, whereby, it is admitted, the defendants became liable for the freight agreed to be paid in and by said charter party, being the sum demanded in the libel, to wit $2,832.15.

The petition further sets forth that said freight has been demanded of them, not only by James A. Copp, the master of said brig, but also by the firm of C. Ludmann & Co., who claim the same as assignees of Theodore E. Bondt, the charterer of said brig; and not only has this suit been brought therefor by the master of said brig, but also a suit against them is threatened by C. Ludmann & Co., to recover the same sum, and they have been notified that they will be held responsible therefor, by C. Ludmann & Co. The defendants do not claim any interest in said sum, and are uncertain and do not know to which of said parties they can safely pay the same, but are ready and offer to pay the same into the registry of this court, in order that said several parties may have their respective claims thereto adjudicated by this court. Wherefore the defendants pray, that they may be permitted to pay said freight money remaining in their hands into this court, and that upon such payment they may be released and discharged from any claim of or liability to said Copp, or the said Ludmann & Co., and that said Copp may be restrained from further proceedings against the defendants, or either of them, to recover said freight; that said Ludmann & Co. may also be restrained from taking any proceedings to recover said freight from the petitioners, and that the expenses of this application be paid out of said money, when so paid into court as aforesaid.

Notice of the filing of this petition having been given to C. Ludmann & Co., they presented themselves before the court, and by affidavit showed the nature of their claim to the freight in question, and tendered an appearance in the cause as claimants of the freight, in case the same should be paid into court, and consented that the same be so paid in and that an injunction issue as prayed for in the petition of the De Castro & Donner Sugar Refining Co. An affidavit showing absence of collusion was also filed. The libellant objects to the granting of the prayer of the petition, and insists upon his right to proceed in his action against the defendants alone.

Upon these papers the question arises, whether a court of admiralty can in this summary way attain the end accomplished in a court of equity by a bill of interpleader. I have not been referred to any adjudged case where such a question has been determined, nor am I aware of such a case. The only allusion to such a proceeding that I know of, is to be found in the case of The Argentina, 16 Law T. (N. S.) 746.

But I see no reason to prevent such a proceeding in a proper case. A court of admiralty is a court of equity. Extreme powers of a peculiar character have been conferred upon it, to enable it to determine speedily and with the least possible expense, by means of simple methods, all questions which may arise in respect to affairs of the sea. Not only has it the power but it is charged with the duty of devising methods by which all questions, of which it can take cognizance, can be adjudicated speedily and justly.

A marked illustration of the flexibility of its proceedings and the extent of its powers is to be found in the action of the supreme court of the United States, sitting as a court of admiralty, when called upon to carry into effect the statute limiting the liability of ship owners. See The City of Norwich, 13 Wall. [80 U. S.] 122, and the rules of the supreme court, upon the same subject. The case just referred to furnishes authority not elsewhere to be found, I think, for the issuing of an injunction by a court of admiralty; and also shows that in cases other than in rem persons not originally parties, and who cannot be served with process within the territorial jurisdiction of the court, may in some instances be compelled to submit their rights to its determination, when such a course is necessary for the proper administration of the law.

In the present case, however, no question can arise in respect to jurisdiction over the parties, for two of them are already before the court and the third consents to appear, and asks to be allowed to submit its rights to the determination of the court. Nor is there any room to doubt the power of the court to restrain the parties, as requested, for all parties consent to the restraint except the libellant Copp; and as to him, asking as he does the decree of this court, it is of course competent for this court to control his proceeding here, and I doubt not to prevent him from taking proceedings elsewhere, in case the freight be paid into court.

The power to permit the real party in interest to become a party to the suit, when his interests are involved, and to permit a fund claimed by different persons to be paid into court, seems to be a necessary power for a court of admiralty; for by the exercise of such power alone can the conflicting rights which sometimes arise in maritime affairs be determined in one action. This consideration always carries weight in a court created

for the purpose of dispatch and simplicity, which "sits from tide to tide" in order that the ships be not delayed in their business, and their owners detained from their homes, to await opportunity for a determination of their rights.

Furthermore, in this way only can the rights of the parties be adjudged according to the principles and rules of maritime law, as administered by a court of admiralty, the forum in this instance desired by all; for if the relief here prayed for cannot be granted, resort must be had to a court of equity, to which tribunal the litigation will be transferred.

It is true that in some cases—and the present is one—the exercise of the power to permit money to be paid into court will in effect transform an action in personam to an action in rem. But such transformations are not unusual in the admiralty. So Shepherd v. Taylor [5 Pet. (30 U. S.) 675], an action commenced in 1810, as a simple action in personam, was determined by the supreme court of the United States in 1831 as an action in rem, notwithstanding that it was then argued in opposition to the decree, that the original proceeding pursued a purely personal remedy, while a decree in rem was asked; and it was said, "These claims are at war with each other; the latter cannot be incident to the former." Shepherd v. Taylor, 5 Pet. [30 U. S.] 701.

I am unable, therefore, to see any good ground for denying to a court of admiralty the power to grant the relief here prayed for, in a proper case. In determining whether the present be such a case, the considerations relied on in courts of equity are of equal force here. If the demand of the libellant be simply a debt due him from the De Castro & Donner Sugar Refining Company, a demand which he has become legally entitled to make against defendants by reason of the receipt by the defendants of the cargo which he has transported and delivered, the prayer of the petition cannot be granted. To grant it would be to introduce parties having no real interest in the issue. It becomes necessary, therefore, to examine into the nature of the libellant's demand, as exhibited in the papers before me.

It appears that on the 15th of September, 1875, the libellant, Copp, chartered the brig Afton to Theodore E. Bondt, for a voyage from New York to Bahia and back to the United States; that the vessel proceeded to Bahia, where a sub-charter home was made on the 30th of April, 1875, by Bondt as disponent of the vessel, to Schramer, Wylie & Co., to which contract the master was not a party. In pursuance of this latter agreement a homeward cargo was furnished by Schramer, Wylie & Co.; and the bill of lading referred to in the libel is a bill of lading given for the cargo so shipped. It appears, also, that all the freight due the vessel, according to the charter party made in New York, has been paid, but that a contention exists between Bondt, the original charterer, and the vessel, as to a claim for detention in Bahia. This claim is based upon the terms of the charter party made by Bondt in New York.

The existence of this claim shows the object of the present action to be the securing of a fund in the hand of the master, that the same may be credited to Bondt against a claim for demurrage. This object is legitimate, but whether it is attainable or not depends upon the extent of the master's right to collect the freight. If the master can collect this freight only in the capacity of an agent of Bondt, or of his assigns the petitioners, it is plain that no objection to the disposal of the money, asked for by them, can be made by the master. His right to collect the freight at all in that capacity under the circumstances would be open to dispute. But the master claims to act for the ship, and maintains that he has an absolute right to collect the freight, because of a clause in the charter party made with Bondt, wherein the freight is declared bound to the ship for the performance of the contract. But I do not conceive that such a clause confers an absolute right as against all the world to collect and receive all freight money which may be earned by the ship during the voyage, whether anything be due upon the charter to the ship or not. The right conferred by such a clause is a right of lien and nothing more. Whether there be a balance due upon the charter made with Bondt, for which, if it exists, the master has a lien upon the freight in question, is not now to be determined.

But it is plain that such a question lies between the master and Bondt or his assigns, and not between the master and the present defendants. In that question the defendants have no interest whatever. It depends upon the terms of a contract to which they are not parties. They are simply holders of a fund upon which the master may have and claims to have a lien, and which, if there be no lien, belongs to Ludmann & Co. Justice to them requires that they have an opportunity to dispute the lien, and justice to the defendants demands that they be allowed to discharge themselves from the custody of the fund in which they have no interest, provided it can be done without impairing the rights of the parties.

The proceedings sought here will accomplish that end. No new burden will be cast upon the master. The contingency that he might be compelled to sustain his lien against the objection of Bondt, results from the nature of his claim and could not be escaped. For him the only question is, whether he shall have his contest in this court or elsewhere; and having himself chosen this forum, it does not lie in his mouth to object to it; nor will his claim be impaired, but rather made more secure, for instead of the

claim against the defendants, who by possibility may not be able to respond to his decree when obtained, he will acquire security for his demand by the money itself deposited in court.

I am therefore clear in the opinion that the prayer of the petitioners should be granted.